# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

ANDREW ZABROWSKI, as Personal
Representative for the Estate of
NICOLE PHILHOWER, deceased,

        Plaintiff,

vs.

JACKSON COUNTY; ADVANCED
CORRECTIONAL HEALTHCARE, INC.;
SHELLY WINKLEPECK, an Individual;
AUTUMN BROWN, an Individual;
DARRYL PARKER, M.D., an Individual;

        Defendants.

Case No.

Hon.

Mag. Judge

_____/

MICHAEL W. LAURILA (P86937)
CHRISTENSEN LAW
Attorneys for Plaintiff
25925 Telegraph Rd., Suite 200
Southfield, MI  48033
(248) 213-4900  |  (248) 213-4901 – Fax
mlaurila@davidchristensenlaw.com
tcalmese@davidchristensenlaw.com

_____/

## COMPLAINT

Plaintiff, ANDREW ZABROWSKI, as Personal Representative of the ESTATE OF NICOLE PHILHOWER, deceased, by and through his attorneys, CHRISTENSEN LAW, states the following for his Complaint against the above-mentioned Defendants in this matter:

## **PARTIES**

1. Plaintiff, Andrew Zabrowski, is a resident of the State of Pennsylvania.

2. At all times relevant to this lawsuit, Plaintiff Andrew Zabrowski's decedent, NICOLE PHILHOWER, was a resident of the United States, and a resident of Jackson, Michigan.

3. At all times relevant to this cause of action, Defendant Jackson County operates the Jackson County Jail d/b/a Wesley Street Jail ("WSJ").

4. Defendant Jackson County also operates the Jackson County Sherriff's Department ("JCSD"), and was at all times relevant hereto, a body politic and Municipal corporation organized under the laws of the State of Michigan, with the capacity to sue and be sued, and is a recipient of federal funding.

5. Defendant, ADVANCED CORRECTIONAL HEALTHCARE, INC., ("ACH") is a foreign profit corporation with its principal place of business in Tennessee and it conducts business in the State of Michigan by contracting with jails such as Jackson County to provide medical services.

2

6. At all times material and relevant hereto, Defendant SHELLY WINKLEPECK, was a registered nurse employed by ACH and placed at WSJ and tasked with performing medical supervision and administering medicine to detainees/arrestees such as Plaintiff's decedent and was acting under the color of state law and in the course and scope of her employment. She is sued in her individual capacity.

7. At all times material and relevant hereto, Defendant AUTUMN BROWN, was a registered nurse employed by ACH and placed at WSJ tasked with performing medical supervision and administering medicine to detainees/arrestees such as Plaintiff's decedent and was acting under the color of state law and in the course and scope of her employment. She is sued in her individual capacity.

8. At all times material and relevant hereto, Defendant DARRYL PARKER, M.D., was a medical physician employed by ACH and placed at WSJ and tasked with prescribing medication and administering medicine to detainees/arrestees such as Plaintiff's decedent and was acting under the color of state law and in the course and scope of his employment. She is sued in his individual capacity.

9. Because Defendant Jackson County contracted for medical care from Defendant ACH, despite being a private entity, as ACH contracts to perform state functions such as providing medical care to arrestees, they are considered a municipality for purposes of Monell liability.

3

**JURISDICTION AND VENUE**

10.  This is a civil action for money damages brought pursuant to 42 U.S.C. §§ 1983 and 1988, as well the Eight and/or Fourteenth Amendments to the United States Constitution.

11.  This cause of action arose both in the City of Jackson, County of Jackson, and State of Michigan.

12.  This Court has jurisdiction over the claims arising under federal law pursuant to 28 U.S.C § 1331.

13.  Venue is proper in this judicial district under 28 U.S.C. § 1391(b) because the events or omissions giving rise to the cause of action occurred at a WSJ, a jail operated by Jackson Coutny, located in Jackson, Michigan.

14.  The amount in controversy exceeds $75,000.00, exclusive of costs, interest, and attorney fees, and jurisdiction is otherwise proper in this Court.

**COMMON FACTUAL ALLEGATIONS**

15.  Plaintiff reasserts and re-alleges each and every allegation contained in paragraphs one (1) through seventeen (14), as if fully set forth herein.

16.  At all times relevant to this cause of action, Defendant Jackson County operates the Jackson County Jail d/b/a Wesley Street Jail ("JCJ").

17.  On July 15, 2024, Plaintiff's decedent, NICOLE PHILHOWER, was arrested by Defendant Jackson County Sheriff's Department.

4

18. Following this arrest, Defendant transported Plaintiff's decedent to Henry Ford Jackson Hospital for medical clearance due to the decedent's substance use.

19. On July 15, 2024, at approximately 1:37 a.m., Defendant JCSD transported Plaintiff's decedent, Nicole Philhower, to Wesley Street Jail for booking.

20. Upon Plaintiff's decedent, Nicole Philhower's arrival to JCJ, she informed the booking officer that she was an addict—she reported significant amount of use of heroin, meth and cocaine—and she informed the booking officer that she was going to suffer severe withdrawal.

21. This information was conveyed to Defendant ACH's medical staff.

22. Defendant Autumn Brown, on July 15, 2024, at approximately 11:36 am, took Plaintiff's vitals, and this revealed a pulse of 85 and a Systolic BP of 102. She documented that Plaintiff's speech was clear and her skin "pink warm and dry to touch" and that she had nausea.

23. Notably, Defendant Parker did not review this note and sign off on it **until July 21, 2024**.

24. Then on July 16, 2024, at approximately 11:23, Defendant Winklepeck took Plaintiff's vitals, and her pulse had significantly dropped to 60 and her Systolic BP had significantly changed to 144; a value that is considered Stage 2 hypertension and a serious red flag.

5

25.  During this examination on July 16, 2024, Defendant Winklepeck noted that Plaintiff's decedent was vomiting, restless and cold and reported this to Defendant Parker; again, her physical symptoms had drastically changed since the day earlier exam.

26.  It is believed that Defendant Parker prescribed Plaintiff Vistaril and Bentyl—neither of which addressed her active withdrawal and/or her threatening blood pressure—in other words, Plaintiff was prescribed medication to address her evident withdrawal symptoms, but not her withdrawal or dangerous blood pressure levels.

27.  It is upon information and belief that Defendant Winklepeck failed to notify Defendant Parker of Plaintiff's ongoing withdrawal symptoms and/or her severe drop in BP, and/or she did notify him, and he was indifferent to this information.

28.  It is believed that Defendant Parker did not make any notes in her chart and/or document any treatment at this time.

29.  Defendant Winklepeck failed to document any actions taken to ensure Plaintiff's decedent safely underwent detoxification.

30.  It is common knowledge amongst medical professionals that opioid withdrawal triggers hypertension, tachycardia, stress cardiomyopathy and various cardiovascular complications.

31.  It is upon information and belief that Defendant Jackson County and Defendant ACH lack any sort of COWS protocol regarding opiate withdrawal, and

6

Plaintiff's decedent was not offered any medications for opioid use disorder ("MOUD") that would have lessened her ongoing cardiovascular withdrawal symptoms.

32. From the period that Plaintiff was at WSJ, she progressively worsened and barely got out of her bed for almost two days; symptoms that were evident to the County Corrections Officers and ACH's medical team.

33. Defendant Jackson County does not have any independent medical providers at the County Jail, but instead contracts with Defendant ACH for this service.

34. It is upon information and belief that Defendant ACH failed to provide Shelley Winklepeck, Autumn Brown, and/or Darryl Parker and/or any other applicable healthcare providers supervision to ensure that it provided timely and adequate medical care to arrestees/pretrial detainees like Plaintiff's decedent who were suffering from dangerously worsening symptoms of withdrawal and indicating a potential cardiovascular complications.

35. It is upon information and belief that Defendant ACH failed to train and supervise Shelley Winklepeck and Autumn Brown regarding their roles, duties, and responsibilities regarding ACH's duty to provide adequate medical care, including, but not limited to, properly documenting withdrawal symptoms and properly conveying the same to Defendant Parker.

36.  It is upon information and belief that Defendant ACH failed to train and supervise Defendant Parker regarding his role, duties and responsibilities to ensure that individuals such as Plaintiff receive adequate medical care, and that included properly reviewing nurse notes and medical files.

37.  Defendant ACH's failures occurred despite that it knew it was the sole avenue for arrestees/pretrial detainees to receive medical care while at WSJ.

38.  On or around July 17, 2024, at approximately 9:35 a.m. Plaintiff's decedent, NICOLE PHILHOWER, suffered from a foreseeable cardiac event caused by her withdrawal and began to seize in her cell.

39.  Plaintiff's decedent's fellow inmates immediately began yelling for assistance.

40.  It is believed that from the point she was booked and placed in a cell until this cardiac event, that despite her evidence medical symptoms that are evident on camera in the cell, no Corrections Officers from Jackson County notified medical personnel.

41.  At approximately 9:41 a.m., Defendant ACH staff arrived to Plaintiff's decedent's cell, she was unresponsive. The medical team administered Narcan and began performing life-saving measures including CPR and AED shock.

42.  Plaintiff's decedent was transported to Henry Ford Jackson Hospital with a weak pulse.

8

43. On July 17, 2024, Plaintiff's decedent, NICOLE PHILHOWER, was declared legally brain dead and was in a coma.

44. On July 19, 2024, NICOLE PHILHOWER, was declared deceased.

45. As a direct result of Defendants' deliberate indifference and failure to provide adequate medical care and/or treat Plaintiff's decedents worsening opioid withdrawal symptoms, Plaintiff suffered for fifty-six (56) hours before she tragically passed away.

### COUNT 1 – EIGHT AND/OR FOURTEENTH AMENDMENT VIOLATION OF THE CONSTITUTIONAL RIGHTS PURSUANT TO 42 U.S.C. § 1983 AS TO ALL INDIVIDUAL DEFENDANTS

46. Plaintiff reasserts and re-alleges each and every allegation contained in paragraphs one (1) through forty (43), as if fully set forth herein.

47. As a citizen of the United States and a pretrial detainee/arrestee, Plaintiff's decedent was entitled to all rights, privileges, and immunities accorded to all citizens of the State of Michigan and of the United States.

48. Pursuant to the Eight and/or Fourteenth Amendment of the United States Constitution, Plaintiff's decedent had a constitutional right to receive adequate medical care based on her medical needs while in WSJ following her July 15, 2024, arrest.

49. At all times relevant, as individuals acting under the color of law, Defendants were required to obey the laws of the United States, including those laws identified

9

under the Eight and Fourteenth Amendment to the United States Constitution, which required them to provide adequate medical care to Plaintiff's decedent based on her displaying clear and severe symptoms of opioid withdrawal.

50.  At all times relevant, Defendants knew that Plaintiff's decedent was suffering from opioid withdrawals, particularly as she notified the booking officer that she was addicted, used significant amounts of opiates daily, and she even told booking officers and ACH medical staff that she would be withdrawing.

51.  At all relevant times, Defendants knew that Plaintiff's withdrawal symptoms and corresponding cardiac stress was worsening—to a dangerous level.

52.  The individual Defendants knew of the risks that were associated with Plaintiff's decedent not receiving adequate treatment for Opioid withdrawal and the risks associated with the severe change in her vitals just a day later after her booking, yet were deliberately indifferent to this known danger and failed to adequately provide critical medical care.

53.  At all times relevant, Defendants had sufficient knowledge of Plaintiff's decedent's severe withdrawal, cardiac distress and the dangers of failing to administer a COWS protocol and/or prescribing MOUDs yet failed to adequately provide critical medical care.

54.  Given Plaintiff's decedent informed the booking correctional officers of her daily opioid usage and informed Defendant Brown of her Opioid abuse on July 15,

10

2024 (specifically that she will have severe withdrawals) and reported worsening withdrawal symptoms, they had actual knowledge that Plaintiff's decedent would be in severe need of medical care for her withdrawal.

55. The individual Defendants had actual knowledge of her worsening withdrawal symptoms as of July 16, 2024, given she experienced dangerous BP levels.

56. Despite the knowledge of the substantial risk of harm to Plaintiff's decedent and that her condition was deteriorating quickly, Defendants were deliberately indifferent to her serious and severe opioid withdrawal and failed to provide her with adequate medication without any valid justification.

57. Further illustrating Defendants deliberate indifference, despite their above knowledge, they prescribed her medication that addressed generic symptoms such as nausea, but these medications did not treat or lessen her withdrawal and cardiac symptoms.

58. Despite the foreseeability and likelihood that Plaintiff's decedent would suffer a withdrawal-induced cardiac event and/or seizure if she did not receive adequate treatment, Defendants took actions and omissions that constitute deliberate indifference to Plaintiff's decedent's serious condition and the unnecessary and wanton infliction of pain and suffering, and psychological injury to Plaintiff, without justification.

11

59. The conduct of Defendants, as described above, deprived Plaintiff's decedent of her clearly established rights, privileges and immunities in violation of the Eighth and/or Fourteenth Amendment of the Constitution of the United States.

60. At all relevant times, Plaintiff's decedent's Eight and/or Fourteenth Amendment rights were clearly established and known to Defendants as Opioid withdrawal is a known medical condition.

61. Pursuant to 42 U.S.C. § 1983, Defendants are liable for all damages allowed under federal and state law.

62. As a direct and proximate result of Defendants' actions and/or omissions, Plaintiff's decedent suffered great physical pain, cardiac event, seizure, mental anguish, psychological injuries, and tragically passed away.

63. The conduct of Defendants were and remains extreme and outrageous subjecting Defendants to punitive damages.

64. That as a direct and proximate result of Defendants' wrongful acts and omissions, the Estate of Nicole Philhower is entitled to compensation for various injuries and damages under the Michigan Wrongful Death Statute, including but not limited to:

    a. Reasonable medical, funeral, and burial expenses;;
    b. Loss of services;
    c. Loss of parental guidance and training;
    d. Conscious pain and suffering as well as emotional and mental anguish and distress suffered prior to her death;

12

e. Loss of society and companionship;

f. Loss of the value of life.

WHEREFORE, Plaintiff respectfully requests this Honorable Court enter a judgement in his favor against Defendants and award compensatory and punitive damages in whatever amount the jury may determine, plus costs, interest, and actual attorney fees.

## COUNT II – MUNICIPAL LIABILITY INADEQUATE POLICIES/PROCEDURES/CUSTOMS, FAILURE TO TRAIN, RATIFICATION/ACQUIESENCE AS TO DEFENDANT JACKSON COUNTY JAIL

65. Plaintiff reasserts and re-alleges each and every allegation contained in paragraphs one (1) through fifty-four (54), as if fully set forth herein.

66. Defendants Jackson County's liability arises out of *Monell v. Department of Social Services,* 436 U.S. 658 (1978).

67. Pursuant to U.S.C. § 1983, as well as the Eighth and Fourteenth Amendments to the United States Constitution, Defendant Jackson County owed Plaintiff's decedent certain duties to properly hire, supervise, monitor, and train the above-named individual Defendants as well as its other Officers/healthcare staff so as not violate the constitutional rights of individuals, including by unlawfully and unreasonably refusing to provide critical medical care in violation of the constitutional rights of those individuals, and in particular, under the circumstances which existed at all times relevant to this cause of action.

13

68.  Defendant Jackson County is liable pursuant to 42 U.S.C. § 1983, in that its policies, procedures, regulations, and customs, or that it failed to enact policies, procedures, regulations, and customs, or lack thereof, caused and was the impetus behind the violation of Plaintiff's decedent's constitutional rights as alleged in this Complaint.

69.  Defendant Jackson County, through its policies, procedures, regulations, or customs, or lack thereof, amounted to reckless indifference toward the constitutional rights of pretrial detainees/ arrestees, and toward Plaintiff's decedent specifically, in the following ways, including, but not limited to:

a.  Failing to properly train its employees, concerning a pretrial detainee/arrestee's rights to receive necessary medical treatment;

b.  Failure to hire and/or retain nurses/healthcare providers whose character and personality would not pose a potential danger to pretrial detainees/arrestees, and Plaintiff's decedent in particular;

c.  Failure to adequately monitor the conduct and behavior of its agents in general, but specifically the above-named individual Defendants, relative to past incidents of inadequate medical treatment to pretrial detainees/arrestees, despite written policies against such misconduct, failure to sufficiently punish officers/employees for past incidents of such conduct has led to the formation of a custom that such misconduct will be encouraged and tolerated by Defendants;

d.   Failure to have proper policies, procedures, and training, including a COWs protocol and/or a policy regarding MOUDs;

e.  Failure to train corrections officers to observe withdrawal symptoms, such as what Nicole Philhower displayed during the course of her time at WSJ;

f.  Failing to implement a policy and/or procedure that permitted medical staff to dispense MOUDs based on medical need;

14

g. Failure to supervise and/or train staff to prevent violation of citizens' Constitutional rights;

h. Ratifying the violation of Constitutional rights by employees and/or agents;

i. Undertaking inadequate staffing and policies in order to save money;

j. Having a blanket policy of refusing to provide necessary medical treatment to certain individuals;

k. Having individuals tasked with providing medical treatment to pretrial detainees/arrestees who are not qualified;

l. Failing to have policies in place ensuring that when a nurse is contacted by jail personnel, that they take necessary steps to ensure the Eighth/Fourteenth Amendment is not violated;

m. Other acts and omissions which may be learned through the course of discovery

70. Defendant Jackson County faces independent Monell liability because its policies, acts, and practices led to Plaintiff's decedent being deprived of her Constitutional right to receive adequate medical care. See *North v. Cuyahoga County*, 754 Fed. Appx. 380 (6th Cir. 2018); *Stewart v. Warren County Board of Commissioners,* 821 Fed. Appx. 564, n. 4 (6th Cir. 2020).

71. It is upon information and belief that Defendant Jackson County's policies and/or procedures prohibited or precluded Nicole Philhower from receiving MOUDs and/or medications that would have treated her withdrawal and cardiac distress.

72. Illustrating the inadequacy of this policy and/or procedure, at this time at WSJ, there were at least four individuals who were actively being given suboxone and/or methadone—both of which are MOUDs and would have addressed her withdrawal, yet she was not prescribed the same.

15

73. As a result of this policy and/or procedure that precluded Plaintiff from receiving critical and necessary MOUDs, the County's conduct amounts to deliberate indifference to Plaintiff's decedent known serious and severe medical needs and her Constitutional rights.

74. Defendant's collective callous and repeated disregard of Plaintiff's decedents' Constitutional rights rises to the level of deliberate indifference.

75. Defendant's conduct in allowing and adopting this patent violation of Plaintiff's decedents Eight and/or Fourteenth Amendment rights was done with malice and/or reckless indifference towards Plaintiff's decedent.

76. Defendant maintained a custom of confusion and lack of supervision/communication between Correctional Officers and medical staff and this disconnect resulted in Plaintiff's decedents Eight and/or Fourteenth Amendment violation(s) in failing to receive necessary medical care.

77. Defendant and their agents/representatives and decision-makers had actual and/or constructive knowledge that Plaintiff's decedent required critical medical treatment (i.e., MOUDs) yet adhered to the above-referenced policies in failing to provide this to her.

78. That as a direct and proximate result of Defendant's wrongful acts and omissions, the Estate of Nicole Philhower is entitled to compensation for various

16

injuries and damages under the Michigan Wrongful Death Statute, including but not limited to:

  a. Reasonable medical, funeral, and burial expenses;
  b. Loss of financial support;
  c. Loss of services;
  d. Loss of financial gifts and gratuities;
  e. Loss of parental guidance and training;
  f. Conscious pain and suffering as well as emotional and mental anguish and distress suffered prior to her death; and
  g. Loss of the value of life.

WHEREFORE, Plaintiff respectfully requests this Honorable Court enter a judgement in his favor against Defendants, jointly and severally, in an amount in excess of $75,000.00, plus costs, interest, and attorney fees, as well as punitive and/or exemplary damages so wrongfully incurred, as the Court deems just.

## COUNT III – MUNICIPAL LIABILITY
## INADEQUATE POLICIES/PROCEDURES/CUSTOMS,
## FAILURE TO TRAIN, RATIFICATION/ACQUIESENCE
## AS TO DEFENDANT ADVANCED CORRECTIONAL HEALTHCARE, INC.

79. Plaintiff reasserts and re-alleges each and every allegation contained in paragraphs one (1) through fifty-four (78), as if fully set forth herein.

80. Defendant Advanced Correctional Healthcare, Inc.'s liability arises out of *Monell v. Department of Social Services,* 436 U.S. 658 (1978) and *Winkler v. Madison Cnty.,* 893 F.3d 877, 904 (6th Cir. 2018) ("A private entity … that contracts

to provide medical services at a jail can be held liable under § 1983 because it is carrying out a traditional state function").

81.  ACH at all material times provided medical care at WSJ pursuant to an agreement with Jackson County.

82.  Pursuant to U.S.C. § 1983, as well as the Eighth and Fourteenth Amendments to the United States Constitution, Defendant ACH owed Plaintiff's decedent certain duties to properly hire, supervise, monitor, and train the above-named individual Defendants as well as its other healthcare staff so as not intentionally violate the constitutional rights of individuals, including by unlawfully and unreasonably refusing to provide critical medical care in violation of the constitutional rights of those individuals, and in particular, under the circumstances which existed at all times relevant to this cause of action.

83.  Defendant ACH, through its policies, procedures, regulations, or customs, or lack thereof, breached its duties, which amounted to reckless indifference toward the constitutional rights of pretrial detainees/ arrestees, and toward Plaintiff's decedent specifically, in the following ways, including, but not limited to:

   a. Failing to properly train its employees, including the above-named Defendant, concerning a pretrial detainee/arrestee's rights to receive necessary medical treatment;
   b. Failing to properly train and/or supervise a nurse, such as Defendant Shelly Winklepeck and Autumn Brown, or any other pertinent healthcare provider, to determine when he/she can or cannot dispense medication such as opioid withdrawal medication;

18

c. Failing to properly train and/or supervise a doctor, such as Defendant Darryl Parker, or any other pertinent healthcare provider, to determine when he/she can prescribe medication such as medication for opioid withdrawal;

d. Failing to properly train and/or supervise its nursing staff regarding the importance of properly documenting a medical file and communicating all changes in medical condition—including a severe change in BP and/or worsening withdrawal symptoms—to an ACH doctor.

e. Failing to properly train ACH doctors regarding following up on reported medical conditions from nursing staff and documenting their files to ensure adequate and timely medical care is provided;

f. Failing to hire and/or retain nurses/healthcare providers whose character and personality would not pose a potential danger to pretrial detainees/arrestees, and Plaintiff's decedent in particular;

g. Failure to adequately monitor the conduct and behavior of its employees in general, but specifically the above-named individual Defendants, relative to past incidents of inadequate medical treatment to pretrial detainees/arrestees, despite written policies against such misconduct, failure to sufficiently punish officers/employees for past incidents of such conduct has led to the formation of a custom that such misconduct will be encouraged and tolerated by Defendants;

h.  Failure to have proper policies, procedures, and training to deal with the circumstances that could amount to the failure to provide critical medical treatment to pretrial detainees/arrestees, including persons such as Plaintiff's decedent;

i. Failure to properly screen, supervise, discipline, transfer, counsel or otherwise control medical staff, including the above-named individual Defendants, who are known or should have known to engage in improper conduct like this case specifically but not limited to, failing to provide necessary medical treatment;

j. Sanctioning nurses' unlawful conduct and failure to provide necessary medical treatment without adequately disciplining or terminating those who were known tog have violated the Constitutional right of pretrial detainees/arrestees on prior occasions, including but not limited to the above-named individual Defendants;

19

k. Having a custom, policy, or practice of tolerating the violation of constitutional rights by nurses or other healthcare providers employed by ACH;

l. Ratifying the violation of Constitutional rights by nurses/healthcare providers;

m. Undertaking inadequate staffing and policies in order to save money;

n. Having a blanket policy of refusing to provide necessary medical treatment to individuals experiencing Opioid withdrawal;

o. Having individuals tasked with providing medical treatment to pretrial detainees/arrestees who are not qualified;

p. Failing to have policies and procedures regarding a COWs protocol and/or MOUDs in order to adequately treat Opioid withdrawal;

q. Other acts and omissions which may be learned through the course of discovery

84. Defendant ACH, illustrating its invalid policies and procedures as a corporate entity and not limited to Jackson County, has on multiple instances before this incident committed similar violations here in failing to adequately treat opioid withdrawal for inmates and/or pretrial detainees at correctional facilities it contracts for medical services, demonstrating its indifference to Opioid abuse and the treatment of the same.

85. In the alternative, even if Defendants Winklepeck, Brown and/or Parker, did not perpetuate these constitutional deprivations by failing to provide adequate medical care, Defendant ACH faces independent Monell liability because its policies, acts, and practices led to Plaintiff's decedent being deprived her Constitutional right to receive adequate medical care. See *North v. Cuyahoga*

*County*, 754 Fed. Appx. 380 (6th Cir. 2018); *Stewart v. Warren County Board of Commissioners,* 821 Fed. Appx. 564, n. 4 (6th Cir. 2020).

86.  It is upon information and belief that either Winklepeck, Brown and/or Parker were not adequately trained regarding what acts to take upon being notified of Plaintiff's decedents medical needs—particularly her evidence withdrawal and her worsening cardiac symptoms—or that Defendant ACH lacked adequate staffing to ensure that pretrial detainees/arrestees such as Plaintiff's decedent received adequate medical care.

87.   It is upon information and belief that Defendant ACH failed to provide Winklepeck, Brown, and Parker, and/or any other applicable healthcare providers supervision to ensure that it provided timely and adequate medical care to pretrial detainees/arrestees like Plaintiff's decedent, particularly in light of her evident and known worsening symptoms of withdrawal.

88.   Defendant ACH, Winklepeck, Brown, and Parker, knew that WSJ did not employ any medical providers who could provide medical care (such as determining whether to administer medication or prescribe medication) and knew that it was their sole responsibility to ensure pretrial detainees/arrestees received adequate medical care while at WSJ.

89.   Had Defendant ACH properly staffed the Jackson County Jail to ensure that a healthcare provider was available to provide necessary medical treatment, Plaintiff would have timely received medical care, including MOUDs.

90.   The collective conduct of Defendants Winklepeck, Brown, Parker, and ACH amount to deliberate indifference to Plaintiff's decedent known serious and severe medical needs and her Constitutional rights.

91.   Defendants' collective callous and repeated disregard of Plaintiff's decedents' Constitutional rights rises to the level of deliberate indifference.

92.   Defendants' conduct in allowing and adopting this patent violation of Plaintiff's decedents Eight and/or Fourteenth Amendment rights was done with malice and/or reckless indifference towards Plaintiff's decedent.

93.   Defendants maintained a custom of confusion and lack of supervision/communication between nursing staff like Defendants Shelly Winklepeck and Autumn Brown and Defendant Parker along with WSJ Correctional Officers and this disconnect resulted in Plaintiff's decedents Eight and/or Fourteenth Amendment violation(s) in failing to receive necessary medical care.

94.   Defendants and their agents/representatives and decision-makers had actual and/or constructive knowledge that Plaintiff's decedent required critical medical treatment (i.e., opioid withdrawal medication) yet adhered to the above-referenced policies in failing to provide this to her.

95.    That as a direct and proximate result of Defendants' wrongful acts and omissions, the Estate of Nicole Philhower is entitled to compensation for various injuries and damages under the Michigan Wrongful Death Statute, including but not limited to:

    a.  Reasonable medical, funeral, and burial expenses;
    b.  Loss of financial support;
    c.  Loss of services;
    d.  Loss of financial gifts and gratuities;
    e.  Loss of parental guidance and training;
    f.  Conscious pain and suffering as well as emotional and mental anguish and distress suffered prior to her death; and
    g.  Loss of the value of life.

WHEREFORE, Plaintiff respectfully requests this Honorable Court enter a judgement in his favor against Defendants, jointly and severally, in an amount in excess of $75,000.00, plus costs, interest, and attorney fees, as well as punitive and/or exemplary damages so wrongfully incurred, as the Court deems just.

Respectfully submitted,

BY:   /s/ MICHAEL W. LAURILA
       MICHAEL W. LAURILA (P86937)
       CHRISTENSEN LAW
       Attorney for Plaintiff
       25925 Telegraph Rd., Suite 200
       Southfield, MI  48033
       (248) 213-4900 | (248) 213-4901 – Fax
       mlaurila@davidchristensenlaw.com
       tcalmese@davidchristensenlaw.com

Dated: June 12, 2026

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

ANDREW ZABROWSKI, as Personal
Representative for the Estate of
NICOLE PHILHOWER, deceased,                        Case No.
                                                   Hon.
        Plaintiff,                                 Mag. Judge

vs.

JACKSON COUNTY; ADVANCED
CORRECTIONAL HEALTHCARE, INC.;
SHELLY WINKLEPECK, an Individual;
AUTUMN BROWN, an Individual;
DARRYL PARKER, M.D., an Individual;


        Defendants.
_____/
 MICHAEL W. LAURILA (P86937)
 CHRISTENSEN LAW
 Attorneys for Plaintiff
 25925 Telegraph Rd., Suite 200
 Southfield, MI  48033
 (248) 213-4900  |  (248) 213-4901 – Fax
 mlaurila@davidchristensenlaw.com
 tcalmese@davidchristensenlaw.com
_____/


## JURY DEMAND

NOW   COMES   Plaintiff,   ANDREW   ZABROWSKI,   as   Personal

Representative  of  the  ESTATE  OF  NICOLE  PHILHOWER,  deceased,  by  and

24

through his attorneys, CHRISTENSEN LAW, and hereby demands a trial by jury in

the above-captioned cause of action.

Respectfully submitted,

BY: /s/ MICHAEL W. LAURILA
MICHAEL W. LAURILA (P86937)
CHRISTENSEN LAW
Attorney for Plaintiff
25925 Telegraph Rd., Suite 200
Southfield, MI  48033
(248) 213-4900 | (248) 213-4901 – Fax
mlaurila@davidchristensenlaw.com
tcalmese@davidchristensenlaw.com

Dated: June 12, 2026

25